## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:16-cv-00126-MR
## [CRIMINAL CASE NO. 2:13-cr-00012-MR-DLH-1]

| | | |
|---|---|---|
| JACKIE LEE RATTLER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1].

## I.    BACKGROUND

After an investigation, law enforcement officers executed a search warrant at the residence of Petitioner Jackie Lee Rattler after a confidential source made three purchases of controlled substances from Petitioner. [Crim. Case No. 2:13-cr-00012-MR-DLH-1 ("CR"), Doc. 167 at ¶¶ 5-9: PSR]. Officers found marijuana, Xanax, cocaine, and 42 firearms during the search. [Id. at ¶ 10].   Petitioner admitted to his conduct when interviewed.   [Id. at ¶ 11].  He was charged in a Bill of Indictment along with multiple co-defendants with one count of conspiracy to possess with intent to distribute marijuana,

oxycodone, cocaine, and alprazolam, in violation of 21 U.S.C. § 846 (Count One); three counts of possession with intent to distribute oxycodone, in violation of 18 U.S.C. § 841(a)(1) (Counts Two, Three, and Six); two counts of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Counts Four and Five); one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Seven); and one count of possession of a firearm by an unlawful user addicted to a controlled substance, in violation of 18 U.S.C. § 922(g)(3) (Count Nine). [CR Doc. 3: Indictment].

Petitioner pleaded guilty to Counts Two through Seven and Count Nine. [CR Doc. 99 at ¶ 1: Plea Agmt.]. As part of the plea agreement, the Government agreed to dismiss Count One, and Petitioner agreed to waive the right to challenge his conviction or sentence on appeal or in any post-conviction proceeding, with the exception of claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 17-18]. During the plea hearing, Petitioner affirmed that he understood the offenses to which he was pleading guilty and the maximum penalties he faced. [CR Doc. 225 at 5-24: Plea Tr.]. He also affirmed that he was guilty of each of the offenses, that the Court was not bound by the Guidelines and could impose any sentence within the statutory limits, and that he understood that if his sentence was

more severe than he expected, he would still be bound by his plea. [Id. at 25-26, 28]. Petitioner testified that his plea was voluntary and that no promises were made to him outside the terms of the plea agreement. [Id. at 28-29]. The magistrate judge specifically questioned Petitioner regarding the waiver of his appellate and post-conviction rights, and Petitioner testified that he willingly accepted those waivers. [Id. at 32]. Additionally, Petitioner testified that he was fully satisfied with the services of his attorney. [Id. at 32-33]. The magistrate judge accepted Petitioner's plea as knowingly and voluntarily made. [Id. at 34].

On July 7, 2014, the probation officer submitted a draft presentence report, which concluded that Petitioner was responsible for 15.2 grams of oxycodone, 3.05 kilograms of marijuana, and 114.6 grams of cocaine. [CR Doc. 161 at ¶ 23: Draft PSR]. Based on this drug quantity, the probation officer calculated a total offense level of 25, which, when combined with Petitioner's criminal history category of I, resulted in an advisory guidelines range of 57-71 months of imprisonment. [Id. at ¶¶ 39, 48, 78].

The Government objected, arguing that based on Petitioner's admissions, as well as the statements of co-defendants Taryn Rattler, Mark Winstead, and Evan Norris, Petitioner was responsible for at least 499.4 grams of oxycodone, 2.7 kilograms of marijuana, and 56.2 grams of cocaine

3

(a higher amount of oxycodone, but a lower amount of the other drugs). [Id., Doc. 162 at 6: Objection to PSR]. On August 18, 2014, the probation officer submitted a final PSR, agreeing with the Government that Petitioner was responsible for a greater quantity of drugs than was reflected in the draft PSR. [Id., Doc. 167: Final PSR]. Specifically, the probation officer determined that Petitioner was responsible for 477.2 grams of oxycodone, 3.05 kilograms of marijuana, and 56.2 grams of cocaine. [Id. at ¶ 23]. Based on this higher drug quantity, the probation officer calculated a total offense level of 33, which, when combined with a criminal history category of I, yielded an advisory guidelines range of 135-168 months of imprisonment. [Id. at ¶¶ 39, 77].

A month after the final PSR was submitted, Petitioner sent a letter to this Court stating that he wished to terminate his retained counsel, Kris Williams, due to ineffective assistance, and asking the Court to appoint substitute counsel. [CR Doc. 180: Motion to Appoint New Counsel]. Petitioner asserted that the PSR was "nothing like [Williams] said it would be" and that Williams had informed him that Williams and the prosecutor had met and agreed that Petitioner would be sentenced based on a total offense level of 11, which would have resulted in an advisory guidelines range of 8 to 14 months in prison. [Id. at 1].

On September 24, 2014, this Court conducted a hearing on Petitioner's motion for new counsel. [CR Doc. 220: Motions Hrg. Tr.]. During the hearing, Petitioner asserted that Williams had spoken with him for "about 30 minutes in a year-and-a-half" and that Williams had told him "one thing, and I get this PSR paper and it tells me something different." [Id. at 5]. Petitioner stated that when he decided to plead guilty he "was told [h]e was [offense] level 18" and that he would "do 30 to 37 months." [Id. at 8]. When Williams was asked to respond to Petitioner's allegations, Williams stated that he did not "want to speak against [his] client's interest" and suggested that the Court continue the hearing for a week so that he and his client could consult. [Id. at 9-10]. Petitioner agreed, [id. at 11], and when the hearing was reconvened on October 10, 2014, Petitioner withdrew his motion to appoint new counsel. [CR Doc. 218 at 5: Motions Hrg. Tr.].

Two weeks later, Petitioner filed objections to the final PSR and a motion for leave to file the objections out of time. [Id., Doc. 190: Objection; Doc. 191: Motion for Extension of Time]. In the objections, Petitioner challenged the PSR's drug-quantity calculation, arguing that the oxycodone pills included less oxycodone than the probation officer found, that the amount of marijuana that was attributed to Petitioner was incorrect, and that

the statements of Taryn Rattler,[1] Winstead, and Norris were unreliable. Specifically, Petitioner challenged the credibility of Taryn Rattler's assertions, noting particular inconsistencies between her statement and the evidence found by investigators, and the lack of corroboration of Winstead's statements. [Id. at 2-3]. Petitioner argued that, at most, he was responsible for six pounds of marijuana and 22.6 grams of oxycodone, which would result in a total offense level of 15 and an advisory guidelines range of 18-24 months of imprisonment. [Id. at 4]. Although this Court denied Petitioner's motion to file the objections out-of-time, the Court noted that Petitioner would not be prejudiced by this because the objections were made part of the record and the Court had read them. [CR Doc. 192: Order Denying Motion; Doc. 227 at 16: Sent. Hrg. Tr.].

Before the sentencing hearing, the probation officer filed a supplement to the PSR, noting that under the 2014 amendments to U.S.S.G. § 2D1.1, Petitioner's total offense level was reduced to level 31, resulting in an advisory guidelines range of 108-135 months of imprisonment. [CR Doc. 194: PSR Supp.]. Also before the sentencing hearing, Petitioner and the Government each filed a sentencing memorandum. [CR Doc. 202: Sent.

---

[1] Because Taryn Rattler shares the same last name as Petitioner, the Court refers to her by her first and last name in this Order to avoid confusion.

Mem.; Doc. 203: Sent. Mem.]. The Government stated that in determining the drug quantities it had relied only on the drugs seized or acquired through undercover buys, as well as admissions from co-defendants, but not merely statements from users who claimed to have purchased drugs for personal use. [CR Doc. 202 at 2]. The Government noted that Petitioner's plea agreement did not recommend a drug quantity because the parties had not been able to reach an agreement as to the amount and Petitioner's counsel wanted to preserve the right to argue for a lower amount at sentencing. [Id. at 3]. The Government requested a 121-month sentence. [Id. at 5].

In his own sentencing memorandum, Petitioner described his background as a family man and community member who assisted others in his Cherokee, North Carolina community. [CR Doc. 203 at 1-2]. He also described his employment history and health challenges. Petitioner argued in favor of a lower drug quantity than that set forth in the PSR, asserting that this Court should not consider the statements of Taryn Rattler, Winstead, or Norris because they were self-serving, unreliable, and uncorroborated. [Id. at 3-4]. Petitioner also challenged one of the prior convictions set forth in the PSR, arguing that this conviction related to another defendant with the same name. [Id. at 5]. Petitioner asserted that his total offense level should be 17,

which would result in an advisory guidelines range of 24-30 months in prison. [Id.].

At the sentencing hearing, Petitioner affirmed that he was guilty of the offenses to which he had pleaded guilty and that his guilty plea was made knowingly and voluntarily. [CR Doc. 227 at 5-8: Sent. Tr.]. When this Court asked Petitioner whether he had reviewed the PSR with Williams, Petitioner responded that he had reviewed the PSR and called Williams, but that he had not had an opportunity to "re-discuss it" with Williams. [Id. at 9-10]. Petitioner stated that the PSR was incorrect and that he wanted to have a number of questions answered before he was sentenced. [Id. at 11]. Counsel Williams responded that he had reviewed the PSR with Petitioner and that they had had "several phone conversations about it." [Id. at 12]. Williams stated that he believed Petitioner was aware of the arguments Williams was asserting on his behalf, but requested an opportunity to confer with his client. This Court suspended the hearing to permit this consultation. When the sentencing hearing was reconvened two hours later, Petitioner stated that he had had an opportunity to speak with Williams and "we've got them a little straightened out." [Id. at 13-15]. Petitioner also affirmed that he understood the contents of the PSR. [Id. at 15].

Williams proceeded to argue at length in favor of Petitioner's objections to the drug quantity attributed to Petitioner in the PSR. [Id. at 16-40, 48-49]. In particular, he asserted that Petitioner should be held accountable only for the drug quantities attributable to the three controlled buys and the controlled substances seized during the search of his residence, but not the amounts based on the "wild claims" and speculation of the co-defendants. [Id.]. He also argued that Petitioner should receive a lower sentence based on his family, background, health, and the nature of the offense. [Id. at 57-66].

This Court sustained the objection to the prior conviction that had been committed by another individual, but overruled Petitioner's remaining objections and adopted the PSR. [Id. at 49-51, 55]. The Court acknowledged that there were inconsistencies in the co-defendants' statements but found that substantial portions of their statements were consistent, particularly the degree to which each of the co-defendants "point[ed] to [Petitioner] rather than others." [Id. at 50]. The Court determined that the applicable guidelines range was 108-135 months of imprisonment. [Id. at 56-57]. During his allocution, Petitioner stated that he had pleaded guilty to the crimes that the Government could prove, but that if he had known that he would be sentenced based on what other people said, he could have gone to trial where those people could be cross-examined.

[Id. at 69-74].  This Court sentenced Petitioner at the bottom of the guidelines range to concurrent sentences of 108 months of imprisonment on each count, with the exception of Count Five, for which Petitioner received a concurrent sentence of 60 months.  [Id. at 74].  The Court noted that this sentence was appropriate because of the seriousness of the offense, which involved the distribution of three types of controlled substances and fed upon and contributed to the addiction of various victims; the need to provide adequate deterrence; and the need to avoid unwarranted sentencing disparities.  [Id. at 74-75].

Petitioner appealed, and the Fourth Circuit affirmed.  United States v. Rattler, 633 F. App'x 199 (4th Cir. 2016) (holding ineffective assistance of counsel should be raised on collateral review).  Petitioner timely filed this § 2255 motion in May 2016.  [Doc. 1]  In the motion to vacate, Petitioner contends that he was improperly charged and sentenced on the drug offenses because no drug quantity was charged or found by a jury; that his sentence is improper under Johnson v. United States, 135 S. Ct. 2551 (2015); and that he received ineffective assistance of counsel.  The Government filed its response in opposition to the motion to vacate on August 8, 2016.  [Doc. 4].

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A.     Petitioner's contention that he was not properly charged with drug offenses and that this Court erred in determining the drug amounts on which he was sentenced.

Petitioner first argues that his indictment did not adequately charge an offense because it did not include a specific quantity of drugs and, based on the failure to charge a specific quantity of drugs, he should not have been sentenced under 21 U.S.C. § 841(b)(1)(C).  [Doc. 1-1 at 8-14].  He also contends that it was error for this Court to find the drug quantity by a preponderance of the evidence.  [Id. at 12].

A collateral review waiver is effective as long as the defendant made the waiver knowingly and voluntarily.  See United States v. Lemaster, 403

F.3d 216, 220 (4th Cir. 2005).  In evaluating claims under § 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  As the Fourth Circuit has made clear, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," and § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. Lemaster, 403 F.3d at 221-22.

Petitioner's challenge to his indictment and sentence is barred by the waiver provision in his plea agreement.  [See CR Doc. 99 at ¶¶ 17-18]. Petitioner does not contend that his guilty plea or agreement to the waiver was unknowing or involuntary, and, even if he did, any such contention is belied by the record.  During the plea proceedings, Petitioner testified that his plea was made knowingly and voluntarily and that he understood the charges, potential penalties, and consequences of his plea.  He specifically testified that he was willingly accepting the waiver provisions in his plea agreement.  [CR Doc. 225 at 32].  He also reaffirmed these answers before this Court at sentencing.  [CR Doc. 227 at 5-8].  Because Petitioner has not

alleged, much less shown, extraordinary circumstances to overcome his sworn testimony, the waiver bars these claims.

Additionally, even without the waiver provision, defects in an indictment are not jurisdictional, <u>see</u> <u>United States v. Cotton</u>, 535 U.S. 625, 630-31 (2002), and a valid guilty plea waives all non-jurisdictional defects prior to the plea. <u>United States v. Moussaoui</u>, 591 F.3d 263, 279 (4th Cir. 2010). Moreover, there was no defect because the indictment properly charged Petitioner with drug offenses under § 841(a)(1). <u>See</u> <u>United States v. Benenhaley</u>, 281 F.3d 423, 424-25 (4th Cir. 2002). Because Petitioner waived these challenges to his indictment and sentence, such challenges are dismissed.

## B. Petitioner's claim that he is entitled to sentencing relief under <u>Johnson v. United States</u>.

Petitioner next contends that he is entitled to relief under the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015).

In <u>Johnson</u>, the Supreme Court held that the residual clause of the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), which defined "violent felony" to include a prior conviction for an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," is void for vagueness. <u>Johnson</u>, 135 S. Ct. at 2556, 2558. The Court did not, however, strike the remainder

of the "violent felony" definition, including the four enumerated offenses and the "force clause" of § 924(e)(2)(B)(i).  Id. at 2563.  Nor did Johnson strike any other provision in § 924.

Here, Petitioner concedes in his memorandum in support of his motion to vacate that he was not sentenced under the ACCA, nor was he sentenced as a career offender.  [Doc. 1-1 at 20].  Nonetheless, he argues that based on the "collateral [e]ffects of Johnson," he was convicted and sentenced pursuant to unconstitutionally vague statutes, citing § 924 and § 922.  [Id. at 15-21].  He also contends that his charges are "cross-referenced" under 18 U.S.C. § 16.  [Doc. 1 at 5].

Petitioner, however, was not convicted or sentenced for having committed a "violent felony" or having a prior conviction for a "violent felony." Nor has he pointed to any language in the sections under which he was convicted and sentenced that he contends is unconstitutionally vague under Johnson.  Accordingly, the holding of Johnson is simply inapplicable to Petitioner, and he is, therefore, not entitled to sentencing relief under Johnson.

**C.   Petitioner's claims of ineffective assistance of trial counsel.**

As his final claim, Petitioner contends that he received ineffective assistance of trial counsel.[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.   <u>See</u> U.S. CONST. amend. VI.   To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).   In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689; <u>see also</u> <u>United States v. Luck</u>, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'"  <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively

---

[2] Petitioner also complains that his appellate counsel made a typographical error relating to the jurisdictional statement in his appellate brief.  [Doc. 1-1 at 3].  To the extent that Petitioner is attempting to allege a claim of ineffective assistance of appellate counsel based on a typographical error in his appellate brief, his claim is without merit.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88.

proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. at 73-74. Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d at 221-22.

Petitioner argues that trial counsel Williams provided ineffective assistance by (1) failing to review the plea agreement with him properly; (2) failing to advise him adequately of the drug amounts that would be attributed

to him or the resulting guideline calculations; (3) failing to obtain an agreement as to the base offense level; (4) failing to review the PSR with him adequately; (5) failing to make relevant and timely objections to the PSR; and (6) failing to argue Petitioner's legal position at sentencing. [Doc. 1-1 at 4, 7]. Petitioner also asserts that he never saw his PSR and that counsel failed to consult with him or attempt to hold the Government to a low-end sentence, given that neither the indictment, nor the plea agreement, contained drug quantities. [Id. at 5-6]. Petitioner also argues that counsel allowed consideration of a prior offense that was committed by another individual with the same name. [Id. at 6]. He contends that this constituted cumulative error and that counsel effectively "abandoned" him. [Id. at 3-4]. As to prejudice, Petitioner asserts that had his counsel not performed deficiently, "the penalties may not have been imposed on [Petitioner] and/or there may have been a very different outcome to the proceedings." [Id. at 7].

The Court first addresses Petitioner's allegations of ineffective assistance of counsel related to counsel's conduct before Petitioner entered his guilty plea. As the Court has discussed, supra, "[w]hen a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." Moussaoui, 591 F.3d at 279. Thus, a

knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Petitioner does not challenge the voluntariness of his guilty plea. Accordingly, he has waived any assertions of errors by his attorney prior to his plea. Thus, his assertion that counsel failed to adequately review the plea agreement with him, advise him of the guidelines calculations, or obtain an agreement as to the base offense level, is waived by his knowing and voluntary plea. See Fields, 956 F.2d at 1294-96.

The Court further finds that, even if Petitioner had not waived his arguments as to the ineffective assistance of counsel prior to his plea, Petitioner has not shown deficient performance or prejudice. Petitioner's contention that counsel did not adequately review the plea agreement with him is belied by his sworn statements at the plea hearing, where he testified that he understood and agreed with the terms of the plea agreement, as well

as his attorney's statement to the Court that he had reviewed each of the terms of the plea agreement with Petitioner and was satisfied that Petitioner understood them. [CR Doc. 225 at 31-32]. The decision not to seek a joint recommendation regarding the amount of drugs involved in the offense was strategic, as the parties could not agree on the amount, and counsel wanted to retain the option to argue for a lower amount than that recommended by the Government. See [Id., Doc. 202 at 3]. See Strickland, 466 U.S. at 690 (holding that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Any error with regard to the guidelines range was cured at the plea hearing where the magistrate judge specifically advised Petitioner that the Court was not bound by the guidelines, that it could sentence him within the statutory limits, and that he could not set aside his plea if he received a higher sentence than he anticipated. [CR Doc. 225 at 25-26]. See also United States v. Lambey, 974 F.2d 1389, 1395-96 (4th Cir. 1992) (en banc) (a court must be able to rely on its subsequent dialogue with a defendant during the plea hearing).

Next, Petitioner's assertion that he never saw his PSR is belied by his letter to this Court, entered on the docket on September 16, 2014, in which he requested new counsel, as well as his statements to this Court during the sentencing hearing, where he stated that he had read the PSR, but had

questions about it.   [See CR Doc. 180; Doc. 227 at 9-11].  The sentencing hearing was suspended so that he could discuss the report with his attorney, and Petitioner then told the Court that he had reviewed it with counsel and understood it.  [CR Doc. 227 at 13-15].  Counsel filed objections to the PSR and a sentencing memorandum, and made lengthy arguments at the sentencing hearing, vigorously advocating for a lower sentence.  Although counsel's submissions could have been timelier, they were considered by the Court and Petitioner does not identify any additional arguments that should have been made.

As for, Petitioner's contention that counsel effectively "abandoned" him, this claim is based on conclusory allegations and therefore is also subject to dismissal.  See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations).  Moreover, the record shows that Petitioner and counsel consulted on a number of occasions in order to discuss possible defenses, the plea agreement, Petitioner's motion to obtain new counsel, and the PSR.  [CR Doc. 225 at 6, 31-32; CR Doc. 218 at 5; CR Doc. 227 at 12-15].  Furthermore, Petitioner's contention that counsel was ineffective in allowing the Court to consider a prior offense that was not committed by Petitioner is incorrect, as the sentencing transcript shows that counsel

objected to this prior conviction, and this Court sustained the objection. [CR Doc. 227 at 55].

In sum, the Court concludes that, for the reasons stated herein, Petitioner has simply not shown that his trial counsel rendered deficient performance. In any event, even if Petitioner could show deficient performance, he cannot show prejudice because he does not allege that but for counsel's allegedly deficient performance, he would have gone to trial. Meyer, 506 F.3d at 369. Nor would such a decision have been objectively reasonable. Petitioner confessed to his conduct and admitted during his allocution that was guilty of the crimes that the Government could prove. [See CR Doc. 167 at ¶ 11; Doc. 227 at 69]. Under these circumstances, it would not have been objectively reasonable for Petitioner to proceed to trial. Therefore, Petitioner has not shown prejudice. See Fugit, 703 F.3d at 260.

In his motion to vacate and supporting memorandum, Petitioner primarily complains about the length of his sentence. To establish prejudice at sentencing, a petitioner must show that but for his counsel's deficient performance, there is a reasonable probability that his sentence would have been more lenient. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). Even if Petitioner had alleged that he would have proceeded to trial, he cannot show that there is a reasonable probability that but for counsel's

allegedly deficient performance, he would have received a more lenient sentence. His assertion that the penalties he received might otherwise have been different is conclusory, speculative, and insufficient to show prejudice. This Court heard the arguments regarding the credibility of the drug quantities admitted by Petitioner's co-defendants and agreed with the amounts as set forth in the PSR. Petitioner offers no evidence or argument to show that there is a reasonable probability that he would have received a lower sentence if he had proceeded to trial. Rather, given the benefits that he received by pleading guilty, including the dismissal of the conspiracy count, the limitation of the drug amounts to those found during the execution of the search warrant and admitted to by Petitioner or the co-defendants, and the three-level reduction for acceptance of responsibility, it is reasonably probable that he would have received a longer sentence had he proceeded to trial. Therefore, even if Petitioner had argued that he would have proceeded to trial, he has not made a showing of prejudice with respect to his sentence. See Royal, 188 F.3d at 249.

Finally, Petitioner's assertion of "cumulative error" is without merit. He has not shown error by counsel, and claims of ineffective assistance of counsel are not subject to cumulative error analysis. Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).

In sum, because Petitioner has waived his ineffective assistance claims arising prior to his knowing and voluntary guilty plea, these claims are dismissed. Further, all of Petitioner's ineffective assistance claims are denied because he has not shown deficient performance or prejudice.

## IV. CONCLUSION

For the reasons stated herein, the Court denies and dismisses the motion to vacate.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. at 484-85. As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

# ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: September 23, 2016

Martin Reidinger
United States District Judge